**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

WALTER BISCARDI, JR., DANIEL DAUBE, AMANDA RIER and STEFANIE MULLEN,

   Plaintiffs,

v.

OUTDOOR MASTERCLASS, INC. and MARK TREAGER,

   Defendants.

CIVIL ACTION FILE NO:

**JURY TRIAL DEMANDED**

## **COMPLAINT**

Plaintiffs WALTER BISCARDI, JR., DANIEL DAUBE, AMANDA RIER, and STEFANIE MULLEN (collectively, "Plaintiffs") file this Complaint for damages against Defendants OUTDOOR MASTERCLASS, INC. and MARK TREAGER (collectively, "Defendants") and respectfully show the Court as follows:

### **NATURE OF THE ACTION**

1.    This is an action for unpaid minimum wages and overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA") and for breach of

contract, fraud, negligent misrepresentation, unjust enrichment, promissory estoppel, and attorneys' fees and expenses of litigation under Georgia law.

## PARTIES

2.     Plaintiff Walter Biscardi, Jr. ("Biscardi") is a citizen of Florida and subjects himself to the jurisdiction of this Court by filing this action.

3.     Plaintiff Daniel Daube ("Daube") is a citizen of Georgia.

4.     Plaintiff Amanda Rier ("Rier") is a citizen of Florida and subjects herself to the jurisdiction of this Court by filing this action.

5.     Plaintiff Stefanie Mullen ("Mullen") is a citizen of Florida and subjects herself to the jurisdiction of this Court by filing this action.

6.     Defendant Outdoor Masterclass, Inc. ("OMI") is a Georgia corporation registered to conduct business in Georgia.

7.     OMI's principal office is located at 107 Technology Parkway, Peachtree Corners, Georgia 30092.

8.     OMI may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Mark Treager, located at 107 Technology Parkway, Peachtree Corners, Georgia 30092.

9.     OMI is subject to personal jurisdiction in this Court.

10.     Defendant Mark Treager ("Treager") is a natural person and may be served with service of process at 2850 Creekwood Lane, Lawrenceville, Georgia 30044 or wherever he may be found.

11.     Treager is subject to personal jurisdiction in this Court.

## JURISDICTION AND VENUE

12.     The Court has original jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because they raise questions of federal law.

13.     The Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

14.     Plaintiffs' state law claims arise out of the same common nucleus of operative facts as their federal claims for unpaid minimum wages and overtime wages under the FLSA because all of Plaintiffs' claims arise out of Defendants' wage and hour policies and practices, and failure to compensate Plaintiffs.

15.     Under 28 U.S.C. § 1391 and Local Rule 3.1(B)(3), venue is proper because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Gwinnett County, Georgia which is located within the Atlanta Division of the Northern District of Georgia.

16.    The employment agreements at issue further provide that the agreements are governed by Georgia law and that jurisdiction for any dispute shall be solely in Georgia.

## FACTUAL ALLEGATIONS

17.    Treager is a self-proclaimed maverick in the professional sales and marketing industry and the CEO of Cornerstone Media Group, Inc.

18.    A mutual colleague introduced Biscardi and Treager in or around 2015 or 2016 and the two of them met at Biscardi's facility, Biscardi Creative Media, in Buford, Georgia.

19.    Treager was there to learn about Biscardi's new video platform, Contemporary Living Network, as a potential investor and/or business partner.

20.    Upon information and belief, Treager went on to start several other companies in Georgia, including OMI, 3 Peak Ventures, Inc., 3 Peak Properties, Inc., and 12 Stone Entertainment, Inc.

21.    Biscardi and Treager did not connect again until September 15, 2021, when Treager reached out to Biscardi via LinkedIn about an opportunity with OMI.

22.    Treager stated that he was looking for someone with Biscardi's skills to fill a VP role at OMI.

23.     Treager stated in his message that the best part about the project "is it is funded!"

24.     Biscardi met with Treager via Zoom where they discussed a mutli-channel subscription video on demand service focused on outdoor activities edutainment.

25.     A few days later, Biscardi sent Treager a proposal outlining his concerns and the terms on which he would agree to join OMI.

26.     Treager addressed Biscardi's concerns and assured him that as President and CEO of OMI, he had the investment and resources needed to launch OMI and specifically that he had secured nine-figure funding for OMI.

27.     Treager later represented that OMI's funding was coming from the sale of real estate Treager owned in New York.

28.     Based on Treager's representations, Walter entered an employment agreement with OMI on or about October 16, 2021.

29.     Defendants hired Biscardi as OMI's Chief Creative Officer with a starting annual salary of $300,000 per year.

30.     Pursuant to his employment agreement, Biscardi was to be paid monthly, was eligible for an end-of-year bonus, and was entitled to unlimited PTO and certain healthcare benefits.

31.     Biscardi's employment agreement also guaranteed Biscardi's full wages up to the point that he was terminated or decided to leave OMI.

32.     Once hired, Biscardi was then tasked with helping Treager recruit a team of executives and employees to work for Treager and OMI.

33.     After hiring Biscardi, and based on the same representations, Defendants hired Daube as VP of Creative Operations, April Simpson as VP of Programming, Stefanie Mullen as Senior Art Director, and Amanda Rier as Graphic Designer.

34.     Based on Treager's representations as outlined above, Daube, Mullen, Simpson, and Rier each entered employment agreements with OMI that included similar benefits to those that OMI agreed to provide Biscardi.

35.     Daube was to be paid an annual salary of $175,000, Mullen an annual salary of $125,000, and Rier an annual salary of $75,000.

36.     Defendants also agreed to pay each Plaintiff benefits, to provide certain equipment, and to pay a home-office allowance.

37.     However, despite Treager's promises and OMI's obligations under its respective employment agreement with each Plaintiff, OMI missed its first payroll and none of the Plaintiffs were paid their agreed-upon wages.

38.     Treager represented at that point that everything was good to go, that payment was forthcoming, and that the banks were just taking longer than expected to transfer, process, and/or deliver OMI's funds.

39.     Plaintiffs continued working based on Treager's representations.

40.     After OMI continued to miss payroll in the ensuing months, Treager repeatedly represented to all of the Plaintiffs that the proceeds from the sale of his New York real estate that was funding OMI were held up by a treasury department investigation into the transaction.

41.     Treager repeatedly represented that the funds needed to pay Plaintiffs could and would be available at any time, that he was just waiting for the funds to clear, and/or that any issues would be resolved in a matter of days or weeks.

42.     Treager represented and repeatedly assured Plaintiffs that they would be paid all of their back wages and all other items outstanding pursuant to their respective employment agreements.

43.     Based on these representations, Plaintiffs kept working for OMI without pay.

44.     To further induce Plaintiffs to continue working, Treager subsequently represented that he had obtained a loan so that he could pay Plaintiffs' wages while the issues with his alleged real estate sale were resolved.

45.     However, ultimately, none of these representations proved true, and Plaintiffs were never paid for their work.

46.     Defendants have continuously admitted that Plaintiffs are entitled to all of their back wages and other benefits due under their respective employment agreements.

47.     Defendants agreed to pay and promised to pay Plaintiffs for all wages and other benefits due and owing from their respective start dates through and including April 22, 2022.

48.     However, to date, Defendants have failed and refused to pay Plaintiffs any of the amounts due and owing.

49.     To this day, Defendants have continued to falsely represent to Plaintiffs in bad faith that the funds needed to pay their wages will be available any day now.

**FACTUAL ALLEGATIONS SHOWING**
**OMI EMPLOYED PLAINTIFFS UNDER THE FLSA**

50.     OMI qualifies as an "employer" within the meaning of the FLSA.

51.     OMI is a covered enterprise under the FLSA.

52.     OMI is an enterprise engaged in commerce or the production of goods for commerce within the meaning of the FLSA.

53.    OMI employs two or more individuals who engage in commerce or regularly handle or otherwise work on goods or materials that have been moved in or produced for commerce.

54.    OMI has employees in at least Georgia and Florida.

55.    OMI orders and receives products and services from outside the state of Georgia.

56.    OMI's employees regularly handle materials that were manufactured outside the state of Georgia while performing their job duties.

57.    OMI's employees regularly use computers and phones manufactured outside the state of Georgia while performing their job duties.

58.    OMI employed each Plaintiff as that term is defined by the FLSA.

59.    OMI hired Plaintiffs.

60.    OMI had the authority to terminate each Plaintiff.

61.    OMI maintained each Plaintiff's employment records.

62.    OMI set each Plaintiff's work schedule.

63.    OMI regularly evaluated each Plaintiff's performance.

64.    OMI was to pay each Plaintiff's wages.

65.    While employed by OMI, Plaintiffs were each an individually covered employee under the FLSA.

66.     In order to conduct their job duties, Plaintiffs contacted Treager and other employees located outside of the state in which they worked via phone, email, and other electronic communication to conduct business on behalf of Defendants.

**FACTUAL ALLEGATIONS SHOWING DEFENDANT MARK TREAGER EMPLOYED PLAINTIFFS UNDER THE FLSA**

67.     Treager employed Plaintiffs as that term is defined by the FLSA.

68.     Traeger is the Chief Executive Officer, Chief Financial Officer, and Secretary of OMI.

69.     Traeger is the sole incorporator of OMI.

70.     As the CEO, CFO, Secretary, and sole incorporator, Traeger was personally involved with the day-to-day operations of OMI.

71.     Treager set the pay policies relevant to Plaintiffs.

72.     Treager hired Plaintiffs.

73.     At all times during Plaintiffs' employment, Treager had the authority to fire Plaintiffs.

74.     At all times during Plaintiffs' employment, Treager had the authority to reprimand Plaintiffs.

75.     Treager regularly evaluated Plaintiffs' job performance.

76.     Treager was responsible for processing and approving payroll relating to Plaintiffs.

77.    Treager chose to withhold Plaintiffs' wages.

## FACTS SUPPORTING PLAINTIFFS' CLAIM FOR UNPAID MINIMUM WAGES AND OVERTIME IN VIOLATION OF THE FLSA

78.    Biscardi worked for Defendants from October 18, 2021 to April 22, 2022.

79.    Defendants were to compensate Biscardi a weekly sum of $5,769.23.

80.    Daube worked for Defendants from November 29, 2021 until April 22, 2022.

81.    Defendants were to compensate Daube a weekly sum of $3,365.38.

82.    Rier worked for Defendants from November 29, 2021 until April 22, 2022.

83.    Defendants were to compensate Rier a weekly sum of $1,442.31.

84.    Mullen worked for Defendants from March 1, 2022 until April 22, 2022.

85.    Defendants were to compensate Mullen a weekly sum of $2,403.85.

86.    To complete their job duties on behalf of Defendants, all Plaintiffs regularly worked in excess of 40 hour per workweek.

87.    Plaintiffs frequently worked early in the morning and late into the evenings on behalf of Defendants.

88.    Plaintiffs occasionally worked on the weekends on behalf of Defendants.

89.    Defendants knew Plaintiffs worked in excess of 40 hours per week in certain workweeks because, among other reasons, Defendants directed Plaintiffs to work more than 40 hours per workweek to complete certain tasks and to meet certain deadlines assigned and/or set by Defendants.

90.    Defendants did not record Plaintiffs' working hours in any workweek in which Plaintiffs worked on behalf of Defendants.

91.    Defendants knew or should have known Plaintiffs worked more than 40 hours in certain workweeks because Plaintiffs typically sent electronic communications to Defendants late in the evening and/or on weekends.

92.    Defendants failed to maintain accurate records of Plaintiffs' hours worked in violation of the FLSA's recordkeeping requirement.

93.    Defendants failed to compensate each Plaintiff any compensation or wages for each and every hour of work Plaintiffs performed on behalf of Defendants.

94.    Therefore, each Plaintiff performed work on behalf of Defendants for which they were not paid at least $7.25 for each hour worked.

95.    Defendants knew Plaintiffs each performed work on behalf of Defendants for which Plaintiffs were not paid at least $7.25 for each hour worked.

96.     Defendants knew Plaintiffs each performed work on behalf of Defendants for which Plaintiffs were not paid at least $7.25 for each hour worked because Defendants never paid Plaintiffs any wages.

97.     These practices and other practices by Defendants resulted in Plaintiffs working hours for which they were not compensated $7.25 an hour for each hour worked on behalf of Defendants.

98.     Defendants knew or should have known that Plaintiffs worked hours in excess of 40 hours during certain workweeks in which they were not properly compensated.

99.     Defendants knew Plaintiffs worked hours in excess of 40 hours per week for which they were not compensated at one and one-half times their regular rate of pay.

100.   Defendants knew Plaintiffs worked hours in excess of 40 per week for which they were not compensated at one and one-half times their regular rate of pay because Defendants have not paid Plaintiffs any wages.

101.   These practices and other practices by Defendants resulted in Plaintiffs working hours in excess of 40 hours per week for which they were not compensated at one and one-half times their regular rate of pay.

## FACTS SUPPORTING PLAINTIFFS' BREACH OF CONTRACT CLAIM
## FOR UNPAID NON-OVERTIME WORK

102.   OMI employed each Plaintiff to perform work on behalf of OMI.

103.   OMI had an employment agreement with each Plaintiff to compensate each Plaintiff for the work he or she performed on OMI's behalf.

104.   Each employment agreement between OMI and each individual Plaintiff was a valid and binding contract under Georgia law.

105.   Each Plaintiff performed work for OMI in accordance with his or her employment agreement.

106.   Per his employment agreement, OMI was to compensate Biscardi a weekly sum of $5,769.23.

107.   Per his employment agreement, OMI was to compensate Daube a weekly sum of $3,365.38.

108.   Per her employment agreement, OMI was to compensate Mullen a weekly sum of $2,403.85.

109.   Per her employment agreement, OMI was to compensate Rier a weekly sum of $1,442.31.

110.   OMI also agreed to pay each Plaintiff certain benefits, to provide certain equipment, and to pay a home-office allowance.

111.   Despite OMI's contractual obligations, OMI did not compensate any of the Plaintiffs at their agreed-upon weekly sums for all hours 40 and under in certain workweeks, nor did it provide benefits, equipment, or a home-office allowance.

112.   OMI has not compensated Plaintiffs any wages for their work on behalf of OMI and has failed to provide benefits, equipment, or a home-office allowance as agreed.

113.   As a result, OMI failed to pay each Plaintiff for all hours they worked between 0-40 hours at their contractual rates, and failed to provide benefits, equipment, and a home-office allowance.

114.   Thus, OMI breached its contract with each of the Plaintiffs.

115.   OMI's breach of each contract was willful and thus Plaintiffs are entitled to additional damages under O.C.G.A. § 51-12-10.

### FACTS SUPPORTING PLAINTIFFS' CLAIMS FOR FRAUD

116.   Prior to their employment, Defendants represented to Plaintiffs that OMI was fully funded, that Defendants had obtained nine-figure funding for OMI, and that the funding obtained was sufficient to operate the company and to pay its payroll and other expenses.

117.   Plaintiffs agreed to leave their current employment and to work for Defendants based on these representations.

118.   When Plaintiffs did not receive payment for their work, Plaintiffs inquired on several occasions as to why payroll was delayed and/or why no wages had been paid.

119.   In response to Plaintiffs' inquiries, Treager, on behalf of OMI, represented to Plaintiffs that the funds were forthcoming in a matter of days or weeks, that Defendants had or would have sufficient funds to compensate Plaintiffs for their work, and that Defendants would pay Plaintiffs all of their back wages and all other benefits to which they were entitled under their respective employment agreements.

120.   Specifically, on December 20, 2021, Defendants informed Plaintiffs via email that funding to compensate them for their work would be available within the week.

121.   On February 18, 2022, Treager sent another email on behalf of Defendants stating that funds for payment of unpaid wages would be received within the next five days and that Defendants would immediately compensate Plaintiffs upon receiving these funds.

122.   Despite Defendants' representations, these statements were false.

123.   Defendants knew these statements were false at the time they were made.

124.   When these statements were made, Defendants had no intention of compensating Plaintiffs for their work.

125.   Treager further misrepresented to Plaintiffs that the funds were available, but that they were "held up" due to various reasons including but not limited to issues transferring or processing the funds with various banks, certain government inquiries and investigations related to the allegedly legitimate sale of Treager's New York property, and/or because a bridge loan Defendants applied for and obtained fell through at the last minute.

126.   Each time, Treager represented that the delays were temporary and would be resolved within a matter of days or weeks and that Plaintiffs would be paid in full.

127.   On a March 4, 2022 phone call, Defendants told Plaintiffs that Treager was a party to the sale of a property in the state of New York and that the proceeds from the sale of that property would fund OMI and be used to compensate Plaintiffs for their unpaid wages and other outstanding items.

128.   Defendants went so far as to show Plaintiffs a redacted sales agreement purportedly for the sale of 50.8 acres of New York real estate for $500,000,000.

129.   Defendants represented that the proceeds from the sale of this property would be available within a matter of days or weeks.

130.   On April 22, 2022, Treager told Plaintiffs via email that he would soon have funds to compensate them for their work on behalf of Defendants and for other items due.

131.   Specifically, Treager stated that the money "still may get moved over the weekend to my bank!" and "[w]e are at the end of this giant pile of crap I have made it appears … I will be totaling up payroll through today adding personal fees and charges as I have them to be ACH'd to your accounts on file. So your pay will be current to the 22nd of April even if you have resigned. That is only fair!!"

132.   Each of the above statements were false.

133.   Defendants knew that each of these statements were false when Defendants made each of these statements.

134.   Defendants made each of these statements in an attempt to induce Plaintiffs to work for Defendants, to continue to perform work on Defendants' behalf, and/or to forego their rights to quit their employment and sue Defendants for the wages owed.

135.   At the time Defendants made these false statements regarding funding and payment, Plaintiffs did not know these statements were false.

136.   Plaintiffs relied upon these false statements to their detriment by agreeing to work for Defendants, by continuing to perform work for Defendants

without compensation, and by otherwise foregoing their rights.

137.    Plaintiffs have suffered damages as a result of Defendants' fraudulent misrepresentations in an amount to be proven at trial.

## FACTS SUPPORTING PLAINTIFFS' CLAIM FOR NEGLIGENT MISREPRESENTATION

138.    Alternatively, Treager negligently represented to Plaintiffs that OMI would compensate Plaintiffs for their work on behalf of OMI.

139.    Treager continually informed Plaintiffs that OMI would receive funds in a matter of days or weeks sufficient to compensate Plaintiffs for their unpaid wages and other items due and owing.

140.    Treager knew or should have known that these statements were false or likely to be false at the time he made these statements to Plaintiffs.

141.    Plaintiffs relied upon Treager's representations that OMI had or would have the funds to compensate Plaintiffs for their work and for other benefits, equipment, and a home-office allowance to their detriment.

142.    Plaintiffs have incurred damages as a result of Treager's negligent misrepresentations including, without limitation, penalties for early withdrawal of retirement savings, higher interest rates, COBRA payments, and loan interest payments.

143.    Plaintiffs are entitled to an award of all actual, compensatory and special damages incurred as a result of Treager's negligent misrepresentations.

## FACTS SUPPORTING PLAINTIFFS' CLAIM
## FOR PROMISSORY ESTOPPEL

144.    Treager promised each Plaintiff that he or she would be compensated for all of their outstanding wages, and that they would receive the benefits, equipment, and home-office allowance provided for under their respective employment agreements through April 22, 2022.

145.    Each of these statements made clear that Plaintiffs would be fully and properly compensated for their work.

146.    Relying on Treager's statements, each Plaintiff continued to perform work on Defendants' behalf.

147.    Each Plaintiff reasonably relied upon Treager's statements because they were told (and believed) that Defendants had sufficient funding that would be available within a matter of days or weeks.

148.    Each Plaintiff was reasonable in relying upon Treager's statements because each Plaintiff had a contract with OMI through which they were to be fully compensated.

149.   Each Plaintiff's reliance upon Treager's statements was foreseeable because each Plaintiff had a contract with OMI to be fully and properly compensated and Plaintiffs had performed work on behalf of Defendants as agreed.

150.   Treager broke his promises to Plaintiffs by failing to pay them for their work in full, and it would be unjust not to enforce Treager's promises.

151.   Each Plaintiff suffered damages as a result of Treager's broken promises, and Treager is individually liable to each Plaintiff as a result of the promises he made.

### FACTS SUPPORTING PLAINTIFFS' CLAIMS FOR ATTORNEY'S FEES AND COSTS

152.   Prior to filing this action, Plaintiffs made multiple written and verbal demands for payment of unpaid breach of contract damages to Defendants.

153.   In response to these demands Defendants admitted that they owe Plaintiffs unpaid breach of contract wages and other damages.

154.   On August 3, 2022, counsel for Plaintiffs sent a written demand to Defendants via Federal Express, U.S. First-Class Mail, and email outlining Plaintiffs' claims against Defendants and demanding that Defendants pay Plaintiffs' unpaid breach of contract damages, as well as other damages outlined therein by August 15, 2022.

155.   Defendants made further promises in response to Plaintiffs' August 3rd

demand, but ultimately failed to pay Plaintiffs any of the amounts due and owing.

156.   As of the filing of this Complaint, Defendants have willfully failed and refused to compensate Plaintiffs as agreed.

157.   Defendants have acted in bad faith, have been stubbornly litigious, and have caused each of the Plaintiffs unnecessary trouble and expense.

## COUNT 1: VIOLATIONS OF THE FAIR LABOR STANDARDS ACT (OMI AND TREAGER)

158.   All previous paragraphs are incorporated by reference as if fully set forth herein.

159.   The FLSA requires that covered employees be compensated for all hours worked at a rate of not less than $7.25 per hour. 29 U.S.C. § 206(a)(1).

160.   The FLSA requires that covered employees are entitled to be paid at the overtime rate for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207(a)(1).

161.   At all material times, Plaintiffs were non-exempt employees of Defendants.

162.   Defendants are subject to the wage requirements of the FLSA because Defendants were an "employer" under 29 U.S.C. § 203(d) during all relevant times.

163.   During all relevant times, Defendants were an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the

meaning of FLSA, 29 U.S.C. § 203.

164.   During all relevant times, Plaintiffs were covered employees of Defendants such that they were entitled to FLSA protections. 29 U.S.C. § 203(e).

165.   By virtue of Defendants' failure or refusal to pay Plaintiffs a minimum wage of at least $7.25 per hour for all hours worked by Plaintiffs, Defendants violated the FLSA. 29 U.S.C. §§ 206 and 215.

166.   By virtue of Defendants' failure or refusal to pay Plaintiffs at the overtime rate for all hours worked over forty (40) in a workweek, Defendants violated the FLSA. 29 U.S.C. § 207(a)(1).

167.   Defendants also failed to make, keep, and preserve records with respect to Plaintiffs to determine their wages, hours, and other conditions of employment in violation of the FLSA. 29 U.S.C. §§ 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(a)(5).

168.   In violating the FLSA, Defendants acted knowingly, willfully, and with reckless disregard of clearly applicable FLSA provisions.

169.   Defendants are liable to Plaintiffs for unpaid wages, liquidated damages, courts costs, and attorney's fees incurred in recovering the unpaid wages. 29 U.S.C. §§ 216(b).

## COUNT 2: BREACH OF CONTRACT
## (OMI)

170.   All previous paragraphs are incorporated by reference as if fully set forth herein.

171.   OMI entered into either express or implied contracts with each Plaintiff to pay each Plaintiff at agreed-upon wage rates in exchange for their services.

172.   Each Plaintiff performed his or her obligations under their respective contracts.

173.   OMI had a contractual obligation to pay each Plaintiff their weekly sum for all straight-time hours worked.

174.   OMI failed to pay each Plaintiff the agreed-upon weekly rate for all straight-time hours worked.

175.   Each time OMI failed to pay each Plaintiff the agreed-upon wage for all hours worked, OMI breached its contractual agreement with each Plaintiff.

176.   As a result of OMI's breach of contract, OMI is liable to each Plaintiff for all non-overtime wages due to each Plaintiff for hours worked that remain unpaid at the contractually-specified rate.

177.   OMI also had an agreement with each Plaintiff to pay for or provide certain benefits, equipment, and a home-office allowance.

178.   OMI failed to pay for or provide benefits, equipment, and a home-office allowance to each of the Plaintiffs.

179.   Each time OMI failed to pay for or provide each Plaintiff's benefits, equipment, and home-office allowance, OMI breached its contractual agreement with each Plaintiff.

180.   As a result of OMI's breach of contract, OMI is liable to each Plaintiff for each Plaintiff's benefits, equipment, and home-office allowance.

181.   Plaintiffs have suffered damages as a result of OMI's breaches of contract in an amount to be proven at trial.

## COUNT 3: FRAUD
## (OMI AND TREAGER)

182.   All previous paragraphs are incorporated by reference as if fully set forth herein.

183.   Treager, on behalf of and through OMI, knowingly and intentionally made false representations of material fact to Plaintiffs.

184.   Defendants represented to Plaintiffs that OMI was fully funded, that OMI had received nine-figure funding, and that Defendants had sufficient funds to operate OMI and to compensate Plaintiffs for all work they performed or were to perform on Defendants' behalf.

185.   Defendants further represented, as alleged herein, that the funds were forthcoming, that there were legitimate reasons for payment delays, and that the funds would be available and that Plaintiffs would be fully compensated in a matter of days or weeks.

186.   At the time Defendants made these statements to Plaintiffs, they knew them to be false.

187.   At that time Defendants made these statements, Defendants intended to deceive Plaintiffs and to induce Plaintiffs to act on these false representations.

188.   Plaintiffs did not know Defendants' representations were false, and justifiably relied on them to their detriment by performing work for Defendants, by continuing to perform work for Defendants, and by foregoing their right to quit their employment and sue Defendants for the wages due and owing.

189.   Plaintiffs have suffered damages as a result of Defendants' fraud in an amount to be proven at trial.

190.   Plaintiffs are also entitled to an award of punitive damages based on Defendants' wrongful conduct, which was knowing, willful, intentional, and malicious.

## COUNT 4: NEGLIGENT MISREPRESENTATION
## (TREAGER)

191.   All previous paragraphs are incorporated by reference as if fully set forth herein.

192.   Treager negligently misrepresented to Plaintiffs that OMI was fully funded, that OMI had nine-figure funding, that OMI had sufficient funds to compensate Plaintiffs and would compensate Plaintiffs for their work on behalf of OMI.

193.   Plaintiffs relied to their detriment on Treager's misrepresentations.

194.   Plaintiffs incurred damages as a result of Treager's misrepresentations, including, without limitation, penalties for early withdrawal of retirement savings, higher interest rates, COBRA payments, loan interest payments.

195.   Accordingly, Plaintiffs are entitled to an award of all actual, compensatory, and special damages against Treager that were suffered as a result of Treager's misrepresentations.

## COUNT 5: QUANTUM MERUIT AND UNJUST ENRICHMENT
## (OMI AND TREAGER)

196.  All previous paragraphs are incorporated by reference as if fully set forth herein.

197.  By working for Defendants as outlined herein, Plaintiffs provided Defendants with the valuable benefit of their services.

198.  Plaintiffs' services were valuable to Defendants.

199.  Plaintiffs' services were provided at Defendants' request.

200.  Plaintiffs expected compensation for their services at the time they provided them to Defendants.

201.  Defendants received and accepted Plaintiffs' services.

202.  Defendants receipt of Plaintiffs' services without compensating Plaintiffs would be unjust.

203.  The value of Plaintiffs' services are set forth herein and equals the wages Plaintiffs should have received for their work at their respective rates.

204.  By refusing to compensate Plaintiffs for the valuable services they provided, Defendants have been unjustly enriched and are liable to Plaintiffs under the theory of quantum meruit under Georgia law.

## COUNT 6: PROMISSORY ESTOPPEL
## (TREAGER)

205.   All previous paragraphs are incorporated by reference as if fully set forth herein.

206.   Treager made clear and unambiguous promises to each Plaintiff including that Defendants had sufficient funds to operate and to make payroll, that Plaintiffs would be fully compensated for their work, and that the funds needed to pay Plaintiffs and provide the benefits promised would be available in a matter of days or weeks.

207.   Based upon Treager's promises, each Plaintiff agreed to work for Defendants and continued to perform work on Defendants' behalf.

208.   Plaintiffs reasonably relied on Treager's statements and their reliance was foreseeable under the circumstances.

209.   As a result of Treager's broken promises, each Plaintiff suffered damages in an amount to be proven at trial.

210.   Treager should be stopped from breaking these promises to Plaintiffs and a judgment should be entered against him for the full amount he promised to pay Plaintiffs.

## COUNT 7: ATTORNEYS' FEES AND COSTS
## (OMI AND TREAGER)

211.   All previous paragraphs are incorporated by reference as if fully set forth herein.

212.   Plaintiffs have made numerous formal and informal demands for unpaid damages to Defendants.

213.   Defendants have on several occasions admitted to owing the wages due and owing to Plaintiffs.

214.   Defendants have willfully refused to compensate Plaintiffs for the wages and other damages they are due without justification or defense, and have engaged in tortious conduct that was knowing, willful, intentional, and malicious.

215.   Defendants' conduct as described herein constitutes bad faith, is stubbornly litigious, and has caused Plaintiffs unnecessary trouble and expense.

216.   Plaintiffs are entitled to an award of their attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11.

## DEMAND FOR JUDGMENT

Plaintiffs respectfully request that the Court:

(a)   Declare that Defendants violated Plaintiffs' rights under the minimum wage and overtime wage provisions of the FLSA;

(b)    Enter judgment against Defendants finding that they violated the FLSA and that their violations were willful;

(c)    Enter judgment against OMI finding that it breached its contract with each Plaintiff and that each such breach was willful;

(d)    Enter judgement against Defendants for fraud;

(e)    Enter judgement against Treager for negligent misrepresentation;

(f)    Enter judgment against Defendants for unjust enrichment;

(g)    Enter judgement against Treager for promissory estoppel;

(h)    Enter judgement against Defendants for attorney's fees and expenses under O.C.G.A. § 13-6-11.

(i)    Enter a monetary judgment against Defendants, jointly and severally, including:

    i)    Unpaid straight-time wages;

    ii)    Unpaid overtime wages at one and one-half times Plaintiffs' regular rate of pay;

    iii)    Liquidated damages in an amount equal to Plaintiffs' unpaid overtime wages;

    iv)    Other compensatory damages suffered by Plaintiffs, in an amount to be proven at trial;

v)  Punitive damages suffered by Plaintiffs, in an amount to be proven at trial;

vi)  Reasonable costs and attorneys' fees;

vii)  Prejudgment interest; and

viii)  Post-judgement interest;

(j)  Grant Plaintiffs a jury trial on all issues so triable; and

(k)  Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial.

Respectfully submitted: September 29, 2022.

| | |
|---|---|
| **POOLE HUFFMAN, LLC.** | _/s/ Michael K. McGuffee_ |
| 3562 Habersham at Northlake | Michael K. McGuffee |
| Building J, Suite 200 | Georgia Bar No. 720456 |
| Tucker, Georgia    30084 | michael@poolehuffman.com |
| T: (404) 373-4008 \| F: (888) 709-5723 | William S. Cleveland |
| | Georgia Bar No. 721593 |
| _Counsel for Plaintiffs_ | billy@poolehuffman.com |